## M. L. BROWN V. THE STATE.

No. 16795.   Delivered June 13, 1934.
Rehearing Denied (Without Written Opinion) October 10, 1934.
Reported in 74 S. W. (2d) 1011.

The opinion states the case.

*Harvey P. Shead,* of Longview, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

LATTIMORE, JUDGE.—Conviction for burglary; punishment, nine years in the penitentiary.

A drug store in the little town of Maud, in Bowie County, Texas, was burglarized on the night of the 13th of July, or early morning of the day following, 1933, and a quantity of jewelry, wrist watches, etc. taken.   The State relied chiefly upon the testimony of the nightwatchman at Maud.   He testified fully to facts which make out the State's case, admitting his own guilty knowledge of and connection with the burglary, which he said was committed by appellant and another party who came to said town on said night, and after much persua-

sion and various kinds of argument persuaded witness to not interfere with them while they burglarized said house. He remained with this appellant while appellant's confederate broke and entered the drug store in question, saw the property in the possession of said confederate after it had been taken from the building, positively identified both, and on the trial pointed out this appellant as one of the burglars. This witness testified in detail telling of various persons who come to where he and appellant and the other party were during the course of the night, and what was said and done by each of the other persons. This witness is corroborated by the testimony of the various other persons referred to by him, who testified for the State that they did come upon the scene at the times indicated and did see said witness with two men, who were driving a V-8 Ford car at the time. The State relief chiefly upon the testimony of one Foster for corroboration of the testimony of the accomplice witness Rachael. Foster identified appellant as one of the men who was with Rachael on the occasion in question.

There are fifteen bills of exception, each of which has been examined. The learned trial judge has very carefully and appropriately qualified each of appellant's bills of exception so that in none of same, when considered in the light of said qualifications, does any error appear.

Bill of exceptions No. 3 complains of the following proceeding: While the witness Rachael was testifying, and had said that appellant had a limp in his right foot which appeared to be hurt or defective in some way, he was asked by the State's attorney to look at appellant's foot and see if he could observe the defect. The State's attorney asked appellant at the time if he would show his foot. The bill shows that appellant objected on the ground that it was a reference in the presence of the jury "To the defendant was called upon to testify against himself." The court sustained appellant's objection to the question. The bill further sets out that the State's attorney asked the witness to walk over to the defendant,—who appears to have been in the court room and in the presence of the jury —and look at defendant's foot, and that witness walked over to the defendant and asked him to "Put your foot on the floor." At this point appellant objected to witness asking the defendant to put his foot on the floor, and asked the court to instruct the jury not to consider the matter, which the court did,—but the bill sets out that appellant took a bill of exceptions to the entire proceeding on the ground that it was compelling appellant to testify against himself, and was a refer-

ence to his failure to testify. The court in his qualification says that as soon as the witness spoke to the appellant and asked him to put his foot on the floor, the objection was made and promptly sustained before the accused had time to indicate whether he was willing or unwilling to do so, and that the jury was then and there instructed not to consider the request of the witness to appellant for any purpose. We are not to be understood as commending a proceeding of this kind, but on the contrary as expressing our disapproval of same, but there is nothing in this record to show that appellant's feet were not where they could be observed by the jury, nor to suggest that they were concealed from the jury, or in anywise to evidence any possibility of harm further than might result from the facts we have above outlined. There are many cases in the books in which it is made to appear that efforts have been made in the presence of the jury to induce the accused to undergo this or the other experiment, and this court has in some cases reversed where the trial court overruled the objection and undertook to compel the witness to give testimony against himself by submitting to the experiment suggested. Some of the authorities indicate a contrary holding. In this case the court having sustained the objection, there being nothing in the bill to indicate any sort of harmful result, or any wrongful appropriation of the matter, we do not think the bill shows reversible error.

There are bills of exception complaining of the cross-examination of appellant's wife, it being urged that same related to matters not germane to her direct testimony. The cross-examination referred to was merely for the purpose of testing the memory of said wife as a witness, and appears to us to have been fairly proper. There are other bills complaining of the cross-examination of other witnesses for the appellant, but in none of same do we think the cross-examination wrongful.

Appellant's fifteenth bill of exception complains of the charge of the court for its failure to instruct the jury that the witness Foster was an accomplice. A special charge is referred to in this connection which we do not find in the record. We have carefully examined the testimony and are of opinion that there is nothing in the record to support the proposition that said Foster was an accomplice. It is shown that after observing appellant and his companion in Maud, the witness Rachael went down to Foster's room and got from Foster a larger and better pistol than that possessed by the witness, and that later Foster came up town and observed the two men

who were with appellant Brown and possibly had some conversation with them, but the record is entirely bare of any suggestion that Foster knew of or was connected in any way with the burglary either in its execution or planning or as assisting the parties to get away or do anything else in this connection. We think the matter does not present error.

The judgment will be affirmed.

*Affirmed.*